JACKSON, *ex dem.* TUTTLE, *against* GRIDLEY.

A person who    EJECTMENT for parts of lots Nos. 19. 23. and 24. in
does not be-
lieve in the ex- the *Oneida Reservation*, in the town of *Vernon*, tried at the
istence of a
God, nor in a *Oneida* circuit, before Mr. Justice *Yates*, in *June*, 1819.
future state of
rewards and      The lessor of the plaintiff gave in evidence a mortgage
punishments,
cannot be a ''- '''  '''
witness in a court of justice, under any circumstances.
    Where it was proved that a person offered as a witness, had, within three months before the trial,
often, deliberately and publicly declared his disbelief in the existence of a God, and a future state
of rewards and punishments, he cannot, on being called to be sworn and objected to, be admitted
to deny those declarations, or to state his recantation of them, and of his present belief in a God,
&c.  But a witness may be restored to his competency, on giving satisfactory evidence of a change
of mind, some time before the trial, so as to repel the presumption, arising from his former declara-
tions of his infidelity, existing at the time he is called to be sworn.
    Though infants may be examined as to their religious knowledge and belief, it is merely to test
their *capacity* to give evidence, or their understanding of the nature and obligation of an oath.
    But an *adult* of sound mind, when called as a witness, and objected to as an infidel, is not to be
questioned as to his religious creed.

from the defendant to him, dated the 12th of *September*, 1815, for securing the payment of 775 dollars and 35 cents, with interest, on the 15th of *April* then next, with the usual power of sale. The plaintiff also gave in evidence the proceedings under the power, and a regular sale of the premises pursuant to the statute, by which it appeared that the premises were sold on the 18th of *February*, 1818, to the lessor, as the highest bidder, for 590 dollars.

NEW-YORK, May, 1820.

JACKSON v. GRIDLEY.

The defendant stated his defence to be usury in the mortgage security. To prove the usury, *Amos Gridley* was offered as a witness, who was objected to by the plaintiff, on the ground that he did not believe in a future state of rewards and punishments, or the resurrection of the dead; and that he had declared, that he would as lief be sworn on a spelling book as the bible; and that he did not believe in the being of a God.

A witness was then sworn, who testified, that he had heard *A. Gridley* deliberately declare, that he did not believe in a future state of rewards and punishments; that man was like the beasts; when he died, there was an end of him; and that he knew of no being superior to man; that these were his serious and public declarations, and that the witness had frequently heard him make them; and that within three months of the time of trial. *O. B.* another witness, testified, that he had heard *A. Gridley* say, that he did not believe in the scriptures, and had as lief be sworn on a spelling book as the bible; that he did not believe in the resurrection of the dead; that man was like the beasts; when he died, there was an end of him.

*S. B.*, another witness, testified, that, within a week before the trial, he told *A. Gridley*, that his evidence would be spoiled on account of his declarations of infidelity; and *Gridley* replied, that he had formerly embraced the principles of the *Universalists*, and rather believed *it* was right.

The counsel for the defendant then stated, that the witness, *G.* was now ready to declare his belief in a future state of rewards and punishments; and on being questioned, *Gridley* said, " that he did not know that he had any reason to doubt that there was an after state of rewards and

punishments." The plaintiff still objected to his being
sworn as a witness ; but the judge overruled the objection,
and directed the witness to be sworn, at the same time
stating, that the witness having avowed his belief in a future
state of rewards and punishments, and denying his alleged
infidelity, it was a question of *credit* to be left to the jury.
The witness lifted up his hand, instead of laying it on the
book, and on being questioned, said that he had no scruples
of conscience, and was about to be sworn on the book, when
the plaintiff proposed to ask him whether he believed in the
scriptures ; but the judge ruled, that the question should not
be asked, and the witness was sworn on the bible ; and tes-
tified, that three years ago, the lessor of the plaintiff confessed
to him, that the first mortgage given to him by the defendant,
was upon interest, at ten and a half per cent. ; and that up-
on giving up that mortgage, the interest upon it was reckon-
ed at that rate, and included in the mortgage given in evi-
dence by the plaintiff. Another witness, a daughter of the
defendant, also proved the admission of the lessor to the
same effect. Several witnesses were sworn on the part of
the plaintiff, to disprove the allegation of usury, and to im-
peach the credibility of *Amos Gridley*.

The judge submitted the evidence as to the usury to the
jury, adding, that in consequence of the evidence of the
character and standing of *A. Gridley*, he ought not to be be-
lieved ; and that his statement was not deserving of any
credit. The jury found a verdict for the defendant.

A motion was made to set aside the verdict, and for a new
trial.

*Talcot*, for the plaintiff, contended, that *A. Gridley* was
not a competent witness, and that his competency could not
be restored by his declarations in court. The facts proved,
in the first instance, clearly showed the incompetency of
the witness, arising from his utter disbelief in the existence
of a God and a future state. If allowed to be examined, af-
terwards, in court, for the purpose of restoring his compe-
tency, the plaintiff ought to have been allowed to ask him
whether he believed in the scriptures, that he might object
to his being sworn on them, if he declared his disbelief.

The question proposed to be put to him, and overruled by

the judge, was merely to ascertain his religion, in order to determine in what mode he should be sworn, so as to bind his conscience. (*Omichund* v. *Barker*, 1 *Atk.* 21. *S. C. Welles' Rep.* 538. 1 *Wils.* 84. *Phillips' Law of Ev.* 16. 19.)

In *Curtiss* v. *Strong*, in the Supreme Court of Errors in Connecticut, (4 *Day's Rep.* 51. 57.) it was decided, that a person " who does not believe in the obligation of an oath, and a future state of rewards and punishments, or an accountability after death for his conduct, is by law excluded from being a witness, for to such a person the law presumes no credit is to be given. Testimony is not to be received from any person, in a Court of Justice, but under the sanction of an oath. It would, therefore, be idle to administer an oath to a man who disregards its obligation. And every person who believes in the obligation of an oath, &c. whatever may be his religious creed, whether *Christian*, *Mahomedan* or *Pagan*, or whether he disbelieves them all, is an admissible witness; and may testify in a Court of Justice, being sworn according to the form of the oath, which, according to his creed, he holds to be obligatory." (2 *Haywood's Rep.* 290.)

*Sill*, contra. The question proper to be put to a witness, is not as to his belief in the scriptures, but as to his belief in a future state of rewards and punishments. The cases cited, therefore, do not apply to the question here. If a subsequent recantation, made in open Court, will not restore the competency of the witness, he never can be examined; for there is no time fixed, within which he is allowed to change his creed, or discard his infidelity. It is enough, if he satisfies the Court that he has wholly changed his belief, and his declarations are the only evidence of that change. The case of *Curtiss* v. *Strong*, arose on the proof of a will, where the subscribing witness must have been competent, and the witness himself was offered to be sworn; and Judge *Swift*, in his treatise on evidence, disapproves of that case.

Again; the whole of the evidence is not set out in the case. If it had been stated, the Court, if satisfied, that after

NEW-YORK, rejecting *Gridley's* evidence, there was still sufficient evi-
May, 1820. dence to support the verdict, would not send the cause to
JACKSON. another jury.
v.
GRIDLEY.

*Talcot*, in reply. Where there is a misdirection of the
Judge, and a motion for a new trial, on that ground, the
Court, if satisfied that the direction was immaterial, and that
the verdict would have been the same without it, will not
grant a new trial; but where illegal or improper evidence
has been admitted, the Court cannot determine what weight
it may have had with the jury. In *Marquand* v. *Webb*,
(16 *Johns. Rep.* 89.) the Court said, that improper evidence
ought not to be allowed to go to a jury, for the Court can-
not reject the evidence as immaterial.

It is said, that the doctrine for which the plaintiff con-
tends, would amount to a perpetual exclusion of the wit-
ness. It is not meant to push it to that extent. All that
is required is, that there should be reasonable and satisfac-
tory evidence, that a person who has once disqualified him-
self, by such deliberate and public declarations of disbelief
in all religion, and all the sanctions of an oath, should give
reasonable and satisfactory evidence of his repentance and
recantation. Another such an instance of utter depravity,
it is believed, could not be found in this country; and the
Court should require the strongest and best evidence of the
witness's sincere recantation of his abominable creed. Can
a person be permitted to state facts not under oath, when
he would not be believed if he was under oath? It would be
absurd to credit a declaration of his recantation made under
such circumstances; when he, if he had been sworn, would
be wholly unworthy of credit. After he was admitted as
competent, the Judge told the jury that they ought not to
believe him. A witness is to be sworn according to the
*religion* he professes, without regard to his nation, or the
place where the testimony is to be given. He must be
sworn in such a manner as to affect his conscience by the
sanction of an oath.

SPENCER, Ch. J. delivered the opinion of the Court.
It was proved, unanswerably, on the trial, that *Amos Grid-*

*ley*, a witness offered by the defendant, had, deliberately, within three months of the trial, declared his disbelief in a God, and a future state of rewards and punishments ; that he had said, man was like a beast, and when he died there was an end of him. Being interrogated as to his present belief, he said that he did not know that he had any reason to doubt there was an after state of rewards and punishments. He was directed to be sworn, though objected to, and being about to be sworn on the gospels, was asked if he believed in the scriptures, and the question was overruled. If *Gridley* ought not to have been admitted as a witness, there ought to be a new trial, for his evidence was material, and might, and probably did, produce a verdict for the defendant.

By the law of *England*, which has been adopted in this state, it is fully and clearly settled, *that infidels who do not believe in a God, or if they do, do not think that he will either reward or punish them in the world to come, cannot be witnesses in any case, nor under any circumstances ; because an oath cannot possibly be any tie or obligation upon them.* *Mahometans* may be sworn on the *Koran ;* *Jews* on the *Pentateuch*, and *Gentoos* and others, according to the ceremonies of their religion, whatever may be the form. It is appealing to *God* to witness what we say, and invoking punishment, if what we say be false. (*Willes' Rep.* 549. 1 *Atk:* 45. *Str.* 1104. *Morgan's case*, *Leach's Cr. C.* 64.) On this subject we have, also, express legislative recognition of the common law. (1 *N. R. L.* 386.) Every person believing in the existence of a Supreme Being, and a future state of rewards and punishments, having conscientious scruples against taking an oath, shall be admitted to an affirmation.

But how is it to be ascertained whether a person offered as a witness, disbelieves in the existence of a God, or in a state of future rewards and punishments ? Mr. *Christian*, in a note to 3 *Bl. Com.* 369. says, " I have known a witness rejected and hissed out of Court, who declared, that he doubted of the existence of a God and a future state ; but I have since heard a learned Judge declare, at *Nisi Prius*, that the Judges had resolved not to permit adult witnesses to be interrogated respecting their belief of the deity, and

a future state. It is, (he adds,) probably, more conducive to the course of justice, that this should be presumed, till the contrary is proved; and the most religious witness may be scandalized by the imputation which the very question implies." In *Curtiss* v. *Strong*, (4 *Day's Conn. Rep.* 51.) it was decided, that the incompetency of the witness could be proved from his declarations out of Court, concerning his opinions and principles; and it was also decided, that he could not be admitted to deny or explain in Court the declarations imputed to him, as it would be incongruous to admit a man to his oath, for the purpose of ascertaining whether he had the necessary qualifications to be sworn. Judge *Swift* (*Treatise on Evidence*, 49, 50.) gives, in my opinion, an unanswerable argument against propounding any questions to a person offered as a witness, and before he is sworn, touching his religious creed. If an infidel has any conscience, or regard to truth, he would, if questioned, honestly avow his creed, and be rejected. If he had no conscience, or regard to truth, and his feelings inclined him to favour the party calling him, he would either deny the opinions imputed to him, or pretend to a sudden conviction, that he had been in an error, and that he now believed in a God, and a future state of rewards and punishments. But there is a still more decisive objection; it being proved by other, and competent witnesses, that the witness offered had deliberately acknowledged himself to be an infidel, and disbelieved in a future state of rewards and punishments, the incompetency of the witness is established by proof. The declarations of the witness, not under oath, do not disprove these facts; for no fact, in a court of justice, can be established, or, when established, can be destroyed, but by evidence; and nothing can be evidence, unless delivered under the sanction of an oath. The assertions in a court of justice of no man, however high his rank, or exalted his character, can be received to make out a fact. I fully concur in the opinion expressed in *Curtiss* v. *Strong*, that it would be incongruous to admit a man to his oath, to ascertain whether an oath had any binding influence on his conscience. If he had no idea of the sanction which the appeal to heaven, by taking an oath, creates, what is there to prevent his swearing

false in the preliminary inquiry ? It may be, that in some

instances, a witness has been interrogated in the way in which *Gridley* was, but we are without any adjudication in the *English* courts upon this point, and are at full liberty to settle the course of proceeding upon solid and rational principles ; and it does appear to me, that upon principle, after it is proved that a witness offered is, at the time he is offered, an infidel, that he can neither be sworn to disprove the fact, nor be permitted, without oath, to make himself competent. I say an infidel at the time he is offered, for the proof ought to relate to avowals and opinions expressed by the witness within such time, as to induce the presumption that his infidelity still exists. If the declarations were made some time before, and it could be proved by external signs, that there had been a change of mind, such as a pious and devout attention to religious worship, and declarations in the belief of God, and a future state of rewards and punishments ; such proof might reinstate the witness, and entitle him to be sworn. It will always be matter of proof addressed to the Court ; and they will take care that the incapacitating infidelity does not exist, when the witness is admitted to be sworn.

It is the practice to question infants of tender years, as to their capacity to give evidence ; and they are asked as to their religious knowledge, and whether they believe in a Supreme Being, and a future state of rewards and punishments. This inquiry is with the view of testing their capacities, and to ascertain whether they have sufficient understanding of the nature and obligations of an oath. The case of infants, supposed not to have strength of mind, and intelligence sufficient to testify, is widely different from that of adults who have perverted minds, not acknowledging the sanction of an oath, and not being impressed with any dread, except of temporal punishments, should they swear falsely.

The course pursued on this trial was to admit the witness on his declaration, *that he did not know that he had any reason to doubt that there was an after state of rewards and punishments,* and to leave his credit to the jury ; and the learned Judge told the jury, that his statement ought to be disre-

NEW-YORK,
May, 1820.

JACKSON
v.
GRIDLEY.

garded as deserving no credit. Now, it does appear to me, if the Judge was authorized to say so, as I think he was, he ought not to have been admitted at all. It would be strange if the law admitted a man to be a witness, that the same law should declare he was not to be believed on account of the obliquity of his mind, and because he was incapable of being bound by any religious tie to speak the truth. The very fact that a person possesses such an awful creed, as renders him unworthy of credit, establishes that he should not be heard.

Religion is a subject on which every man has a right to think according to the dictates of his understanding. It is a solemn concern between his conscience and his God, with which no human tribunal has a right to meddle. But in the development of facts, and the ascertainment of truth, human tribunals have a right to interfere. They are bound to see that no man's rights are impaired or taken away, but through the medium of testimony entitled to belief; and no testimony is entitled to credit, unless delivered under the solemnity of an oath, which comes home to the conscience of the witness, and will create a tie arising from his belief that false swearing would expose him to punishment in the life to come. On this great principle rest all our institutions, and especially the distribution of justice between man and man.

There must be a new trial, with costs to abide the event.