WHITAKER *against* YOUNG & YOUNG, impleaded with YOUNG, heirs of YOUNG, deceased.

DECLARATION in assumpsit, upon the statute " for the relief of creditors against heirs and devisees," (1 R. L. 316,) thus: " Albany, ss. Joseph Whitaker complains of Charlotte Young, Hannah Young, and Alexander Young, heirs of Benjamin Young, deceased, they the said Charlotte Young, Hannah Young, and Alexander Young, being the sisters and brother of the said Benjamin Young, deceased; *the said Charlotte Young* and *Hannah Young, being in custody, &c., and the Sheriff of the city and county of Albany, having returned to the writ of capias ad respondendum, issued to him in this cause, as to the said Alexander Young, that he was not found in his bailiwick;* for that, whereas the said Benjamin Young, in his lifetime, to wit, on the 1st day of January, A. D. 1816, at the city of Albany, and in the county of Albany aforesaid, was indebted to the said Joseph Whitaker, in the sum of 1500 dollars, of good and lawful money of the United States of America, for so much money by the said Joseph Whitaker, before that time lent and advanced to the said Benjamin Young, in his lifetime, at his special instance and request; and being so indebted, he, the said Benjamin Young, in his lifetime, in

*Form of declaring against heirs, on the simple contract of the ancestor, under the act "for the relief of creditors against heirs and devisees." (1 R. L. 316.) The statute prescribing the mode of proceeding against joint debtors, where a part only are brought into court, (1 R. L. 521,) does not apply to an action against heirs, &c.*

*These are liable to the extent of their inheritance only.*

*If some are not warned those who are*

must plead it in the first instance, or they lose the benefit of contribution.
But where it appears on the face of the declaration, that only a part of the heirs, &c., are arrested in the suit, those who are so arrested may demur.

consideration thereof, afterwards, to wit on the day and year aforesaid, at the city of Albany, and in the county of Albany aforesaid, undertook, and then and there faithfully promised the said Joseph Whitaker, to pay him, the said Joseph Whitaker, the said sum of money above mentioned, when, he, the said Benjamin Young, should be, thereunto, afterwards requested."

[*The declaration also contained a like count for work and labor, goods sold and delivered, money had and received, money paid, laid out and expended, &c., &c., and concluded thus :*]

Nevertheless the said Benjamin Young in his lifetime, and the said Charlotte Young, Hannah Young, and Alexander Young, as heirs of the said Benjamin Young, since the death of the said Benjamin Young, not regarding the said several promises and undertakings so as aforesaid made by the said Benjamin Young, in his lifetime, to the said Joseph Whitaker, but contriving, and craftily and fraudulently intending to deceive and defraud the said Joseph Whitaker, in this behalf, the said Benjamin Young, in his lifetime, did not, nor have the said Charlotte Young, Hannah Young, and Alexander Young, as heirs of the said Benjamin Young, since the death of the said Benjamin Young, paid to the said Joseph Whitaker the said several sums of money above mentioned, or any or either of them, or any part thereof, (although often requested so to do.) But the said Benjamin Young, in his lifetime, wholly neglected and refused so to do ; and the said Charlotte Young, Hannah Young, and Alexander Young, as heirs of the said Benjamin Young, have hitherto wholly neglected and refused, and still do refuse so to do ; to the damage of the said Joseph Whitaker, of 2000 dollars, and, therefore, he brings suit, &c.

General demurrer and joinder.

*H. Louks*, in support of the demurrer. The action is against the defendants, as heirs, and one is returned not taken. This appearing upon the face of the declaration, is the proper subject of a demurrer.(a)

In *Jackson* v. *Hoag*,(b) it was held that a judgment against heirs, when all were not taken, did not bind the inheritance

(a) 1 Chit.
Pl. 29.
(b) 6 John.
Rep. 59.

of those who were omitted. Heirs are not responsible *qua* joint partners personally, but *qua* inheritors, each to the extent of his inheritance. Take the case of two sons and three children of another son deceased ; the two former take each one-third, and the three latter one-third, and their liability should be apportioned accordingly ; but in case of partners, each is answerable for the whole debt, and if one only has property, this is liable for the whole.

Again ; in case of heirs, each is liable to contribution ; for each is answerable only so far as he has inherited ; and the amount of his inheritance limits the extent of his responsibility. Hence it is, that heirs, &c., and tertenants, must all be warned by *scire facias*, on a judgment against the ancestor ;(c) for those not warned, are not obliged to answer ; but if some are not warned, and the others do not take advantage of this in the first instance, by plea, they lose the benefit of contribution, or of relief by an *audita querela*, in case execution issues against their land only.(d)

This is not an objection which can be obviated by amendment ; for if the return of *non est factum* be stricken out of the declaration, as to one heir, still the others may plead that there is one heir who is not taken, which will be equally decisive against farther proceedings in the cause.

*D. Hosford*, contra. The words of the statute(e) regulating the proceedings against joint debtors, where all cannot be taken, are, " that all persons jointly indebted to any other person, upon any joint obligation, contract or matter whatsoever," may be pursued to judgment, in the mode we have taken here.

The heir is chargeable *jure suo*, as for his own debt, by virtue of the original contract, from having assets descended to him, and therefore, the declaration against him in debt is in the *debet et detinet*, although he may discharge himself by showing that he had no assets.(f) Hence the heir is considered the debtor to the creditor of the ancestor, until he discharges himself by showing that he has no assets. Where there are several heirs, the demand against them being joint, they are certainly joint debtors in the strictest sense of the

ALBANY, Feb. 1824.

Whitaker v. Young.

(c) 2 Saund. 9, n. (10.)

(d) *Michel* v. *Croft*, Cro Jac.506. *Clerk* v. *Hardwicke*, Moor. 525 *Eyres* v. *Cowley*, W. Jones, 319. *Sir W. Herbert's case*, 3 Rep. 12, 13.

(e) 1 R. L. 521, s. 13

(f) 1 Esp. N. P. pt. 2, p. 52, Gould's ed. and the cases there cited.

ALBANY,
Feb. 1824.

Supplement,
&c.,

(g) 6 John
Rep. 59.

terms. That this is so, was clearly the opinion of this Court in *Jackson* v. *Hoag*,(g) cited on the other side.

The heirs who are taken, will sustain no greater incon venience than other joint debtors, who are proceeded against in the same manner. The same remedy exists to compel contribution in both cases.

*Curia.* The defendants are answerable as heirs to the extent of their inheritance only ; and, as between each oth er, are liable to contribute on *scire facias.* If some are not warned, those who are must plead it, in the first instance, or they lose the benefit of contribution. (2 Saund. 9, n. 10, and the cases there cited.) This principle applies to the present case. As two only are taken, and it appears on the face of the declaration that three are liable, there is no need of the non-joinder being shown by plea. The defendant may de- mur. (1 Chit. Pl. 29, and the cases there cited.) The joint debtor act (1 R. L. 521, s. 13,) has no application to an ac- tion against heirs. There must, therefore, be judgment for the defendant, with leave to amend on payment of costs.

Judgment for the defendant.

---

Supplement to the note (a), ante, 432, 436, upon the question, ARE UNI-
VERSALISTS ADMISSIBLE WITNESSES ?

I REMARKED in the note to which this is a supplement, that in the Courts of Common Pleas and Nisi Prius, in several counties of this state, the question as to the admissibility of witnesses, who adhere to the creed of Universalism, has been frequently agitated. Some circumstances led me to suppose that this had oftener been the case in the 5th circuit, than in any other. Among these circumstances, was that of having seen the history of a public meeting in one of the counties of that circuit, in which the ques- tion was canvassed, as a matter which involved the rights of great num- bers, and in which that respectable lawyer and philanthropist, Mr. F. C. White, was mentioned as having taken a leading part in the discussion. These considerations led me to request of the Hon. N. Williams, Judge of that circuit, an account of his views in relation to this question, if it had arisen and been decided by him; and I am indebted to this able jurist for his notes of the following opinion, upon the question being presented in a

case before him, while on the 5th circuit. This did not come to hand till after my note had been printed; but I hasten to give it the earliest possible place in these reports.

WILLIAMS, Circuit Judge, delivered the opinion of the Court. The point may be considered as open in this country, unless the opinion upon it given by the late learned Chief Justice, in the case of *Jackson* v. *Gridley*, (18 John. Rep. 103,) is considered as conclusive.

The rule, as adopted in that case, is this, " *That infidels who do not believe in a God, or if they do, do not think that he will either reward or punish them in the world to come, cannot be witnesses.*"

That an infidel who believes in a God, and also in rewards and punishments in a future state, may be a witness, is admitted in all the authorities, (except in Co. Litt. 6 b, which is certainly not law at this day,) and the question now is, simply, *Whether a man believing in a God, and in rewards and punishments in this world only,* may be a witness.

In the case of *Jackson* v. *Gridley*, the witness had declared, not only that he did not believe in a future state of rewards and punishments, but that when he died there was an end of him; that man was like the beasts, and that he knew of no being superior to man. Here, then, was a complete atheist; one who did not feel any responsibility to any superior being. Certainly, such a man could not be allowed as a witness; and the opinion delivered on the point in question, was not called for in that case. If the witness had believed in the Supreme Being, and in a responsibility to him for his actions, either in this, or a future state, the case would have been altogether different. But, in order to present the precise point in question, a witness must be offered who believes in a God, and in punishment by him in this life only. Ought a man with *such a creed*, in other respects competent, to be a witness? This is the question.

The cases reported in Strange, 1104, and Leach, 64, do not appear to me to touch this precise point at all. Neither do any of the opinions reported in the great case of *Omichund* v. *Barker*, except that of Chief Justice Willes. Unfortunately, his opinion is differently reported in Atkyns' and in Willes' Reports. And it would seem that the writers upon evidence, since that case was decided, have generally followed the report of Atkyns, which was published long before the publication of the opinion of Ch. J. Willes, from his own manuscript; and it is evident that Atkyns must have reported from his own notes of the opinions delivered in that case, because he has given that of Willes rather loosely, and materially variant from the one left by that learned Judge in his own handwriting.

As this opinion of Willes appears to have been relied upon by all the law writers upon the subject, as well as by the late Chief Justice in the case of *Jackson* v. *Gridley*, it becomes highly important to know what it was, as delivered, and preserved for future times by himself.

This opinion, as reported by Atkyns, (1 Atk. 45, and in ed. of 1781, p. 55,) was this: " And though I am of opinion that infidels who believe a God and future rewards and punishments in the other world, may be witnesses,

yet I am clearly of opinion that if they do not believe a God, or future rewards and punishments, they ought not to be admitted as witnesses."

In the opinion, as reported in Willes' Reports, and which appears to be a serious, learned and elaborate one, the Chief Justice lays down (p. 545) this rule upon the point in question: "And, therefore, nothing but the *belief of a God*, and that he will *reward and punish us according to our deserts*, is necessary to qualify a man to take the oath." Again he says, (p. 549) " Infidels, (if any such there be) who either do not believe a God, or if they do, do not think that he will either reward or punish them *in this world* or in the next, cannot be witnesses," &c. And to make it clear, beyond a doubt, that he does not mean *future*, he says, by way of illustration, (pp. 550, 1,) " Supposing an infidel, who believes a God, and that he will reward and punish *in this world*, but does not believe a future state, be examined on his oath, (as I think he may,) and on the other side, to contradict him, a christian is examined, who believes a future state, and that he shall be punished in the next world as well as in this, if he does not swear to the truth, I think that the same *credit* ought not to be given to an infidel as to a christian, because he is plainly not under so strong an obligation."

From the foregoing, it is evident to me that Atkyns has not discriminated nicely in reporting the opinion which has been so much relied upon; and it is not pretended that any of the opinions of the other Judges in the same case touch this point at all. And upon the whole, I cannot but yield my conviction, that according to the law as laid down by Ch. J. Willes, it is not necessary, in order to render a man a *competent* witness, that he should believe any thing more than that there is a Supreme Being, and that he will reward and punish, either in this or in a future life.

Jews, Mahomedans and Hindoos, have all been admitted as witnesses in England; and it would seem unchristian as well as unjust, so to extend the rule in this country, as to exclude those christians who believe in God, in a future state, and salvation through Jesus Christ, and in punishments in this world, though not in the next.