Stanbro *v.* Hopkins.

————————•-•-•————————

## STANBRO *vs.* HOPKINS.

Notwithstanding the present constitution makes all persons *competent* witnesses, whether they be believers in a Supreme Being, or atheists or infidels, yet a party against whom a witness is called may interrogate him, on his cross-examination, as to his opinions on matters of religious belief, and show by him that he does not believe in the existence of a God who will punish false swearing.

And it is not erroneous for the judge to charge the jury that the fact thus proved will go to the *credit* of the witness.

Stanbro *v.* Hopkins.

Where, in an action to recover the possession of personal property to which the plaintiff claims title under a chattel mortgage executed to him by a third person, and which property the defendant claims to hold as a bona fide purchaser for value from the mortgagor after the lapse of a year from the filing of the mortgage, if it is shown that he purchased without notice of the mortgage, and there is no evidence that the mortgagor owed any person other than the mortgagee at the time of the sale to the defendant, it cannot be presumed that the defendant purchased the property with intent to defraud the creditors of his vendor.

It is therefore erroneous to charge the jury that if they believe from the evidence that the defendant purchased the property with intent to defraud the creditors of the vendor, the plaintiff is entitled to a verdict, although they should find that the defendant did not know of the plaintiff's mortgage, or of the debt then due to him.

THIS was an action to recover the possession of personal property. The plaintiff claimed title to the property under a personal mortgage executed to him by Thomas C. Hopkins. The defendant claimed to hold the same as a bona fide purchaser for value from the mortgagor, subsequent to one year from the time the mortgage was filed. The defendant testified that he had no knowledge of the existence of the mortgage at the time he purchased the property. The plaintiff gave evidence that tended to show the defendant knew of the mortgage when he bought the property. There was no evidence that the mortgagor owed any person other than the plaintiff when the defendant purchased the property

The action was tried at the Chenango circuit, in February, 1858, when the plaintiff obtained a verdict for the property, the value of which the jury assessed at $255.50. The defendant made a motion for a new trial, upon exceptions. The exceptions and rulings to which they were taken sufficiently appear in the following opinions.

*Rexford & Kingsley,* for the plaintiff.

*Sherwood S. Merritt,* for the defendant.

Stanbro *v.* Hopkins.

BALCOM, J.   Woodbridge Spencer was a witness for the defendant, and gave material evidence for him.   On his cross-examination the plaintiff, under the defendant's objection and exception, was permitted to show by him, (the witness hesitating to answer,) that he did not believe in the existence of a Supreme Being who will punish false swearing.   And the judge charged the jury that such fact might go to the credit of the witness ; to which the defendant's counsel excepted.

The jury could not have understood from the charge that, as matter of law, Spencer's disbelief in the existence of a Supreme Being who will punish false swearing, affected his credibility ; but only, if they were of the opinion it ought to render his evidence less reliable, they might so regard it.

The supreme court of this state decided, in 1820, that a person who did not believe in the existence of a God, nor in a *future state of rewards and punishments,* could not be a witness in a court of justice, under any circumstances.   (*Jackson* v. *Gridley,* 18 *John.* 98.)   In 1823 the same court held that " one who believed in the existence of a God, who will punish him if he swears falsely, is a competent witness." (*Butts* v. *Swartwood,* 2 *Cowen* 431.   *The People* v. *Matteson, Id.* 433.)   The legislature afterwards passed a law, which took effect on the first day of January, 1830, in which it was declared that "every person believing in the existence of a Supreme Being, who will punish false swearing, shall be admitted to be sworn, if otherwise competent." (2 *R. S.* 408, § 87.)   And in 1842, Greenleaf, in his treatise on evidence, said: "It may be considered as now generally settled, in this country, that it is not material whether the witness believes that the punishment will be inflicted in this world or in the next.   It is enough if he has the religious sense of accountability to the Omniscient Being, who is invoked by an oath." (1 *Greenl. Ev.* § 369.)   It seems that the English rule then was, that a person must believe there is a God and a *future* state of reward and punishment, or he could not be admitted to be sworn as a witness.   (*See* 1 *Phil. Ev. Cow. & Hill's ed.*

*p.* 21; *see Notes on same subject, vol.* 1, *pp.* 62, 63; *id. vol.* 2, *p.* 1503; 3 *Blk. Com. late ed., note* 29, *pp.* 285, 286; 1 *Atk.* 4; *B. N. P.* 202; *Peake's Rep.* 11.)

The people of this state have since declared in their constitution, which became in force on the first day of January, 1847, that "no person shall be rendered incompetent to be a witness on account of his opinions on matters of religious belief." (*Const. art.* 1, § 3.)

Under the old common law rule, by which persons were rejected as witnesses, from defect of religious sentiment and belief, the incompetency of a person to be a witness, for such cause, was never presumed; nor, as a general rule, could a person, who was objected to for such cause, be interrogated respecting his religious belief. His defect of religious sentiment and belief had to be established by proof of his previous declarations and conduct. (*See authorities cited supra; also see* 1 *Greenl. Ev.* § 370.) And this general rule was made statutory in this state on the first day of January, 1830, when it was enacted by the legislature that "No person shall be required to declare his belief in the existence of a Supreme Being, or that he will punish false swearing, or his belief or disbelief of any other matter, as a requisite to his admission to be sworn or to testify in any case. But the belief or unbelief of every person offered as a witness, may be proved by other and competent testimony." (2 *R. S.* 408 § 88.)

There are cases in the books in which the general common law rule, above mentioned, was departed from. In one case Buller, J., held that "the proper question to be asked of a witness is, whether he believes in God, the obligation of an oath, and in a future state of rewards and punishments." (*Peake's R.* 11.) In a note in Blackstone's Commentaries the editor remarks, "I have known a witness rejected, and hissed out of court, who declared that he doubted of the existence of a God, and a future state." And Phillips says, "The proper mode of examining a witness, for the purpose of trying his competency in religious principle, is not to question him as to

his particular opinions, but to inquire generally, whether he believes in the existence of God and of a future state." (1 *Phil. Ev.* 24, *Cowen & Hill's ed.*)

The reason that was generally assigned for the rule which prohibited the interrogation of the person offered as a witness, as to his religious opinions, when objected to for defect of religious sentiment and belief, was " that it would be incongruous to admit a man to his oath, to ascertain whether an oath had any binding influence on his conscience." (*See Jackson* v. *Gridley,* 18 *John.* 104.) But this reasoning is inapplicable to the question under consideration, and to all similar ones arising under the state constitution now in force ; for that instrument makes all persons competent witnesses, whether they be infidels or atheists or believe they are " like the beasts that perish." And inasmuch as persons who do not believe in the existence of a Supreme Being who will punish false swearing, are now competent to testify on oath, touching all matters in issue, on a trial, I am unable to perceive any good reason why the party against whom they are called may not interrogate them, on their cross-examinations, as to their opinions on matters of religious belief, instead of calling other witnesses to prove such opinions.

The constitution has not expressly abrogated the statute above quoted, which shielded persons from declaring their religious opinions, as a requisite *to their admission to be sworn or to testify,* in any case, for it agrees with such statute, when it declares, " no person shall be rendered incompetent to be a witness on account of his opinions on matters of religious belief." But as no person can now be excluded as a witness for defect of religious sentiment and belief, by reason of this constitutional provision, the statute above mentioned is a dead enactment.

The question to be determined is not what questions may be put to persons to test their competency to be sworn at all, but whether witnesses, after they have been sworn, may be interrogated on their cross-examinations, as to their opinions on

matters of religious belief, for the purpose of affecting their credibility, if the court and jury should think their opinions, when elicited, ought to render their evidence less reliable; therefore neither the constitution nor any of the statutes to which I have alluded will control the decision we are to make.

Persons may be competent witnesses and not credible ones. And when the people declared, in their constitution, that "no person shall be rendered incompetent to be a witness on account of his opinions on matters of religious belief," they did not intend to say that some persons may not have such awful religious opinions as to render them less credible as witnesses than others. The occupation of a witness may be so abhorrent as to affect his credibility; and a person's religious views may be so shocking as to afford evidence of great obliquity of mind, and of the grossest moral depravity. To say that a person whose religion teaches him that his happiness will not be diminished in time or eternity by the utterance of falsehood as a witness, is entitled to equal credit, in a court of justice, with one who believes the doctrines of the sacred scriptures, is extremely absurd. (*See* 17 *Wend.* 460.)

The policy of the common law has ever been to permit those who are to pass upon the testimony of a witness, to see, as far as outward indications will allow, what is passing in his breast at the time he testifies. Hence a witness may be required to disclose, on cross-examination, his present situation, employment and associates; as for example, in what house or family he resides, what is his ordinary occupation, and whether he is intimately acquainted and conversant with certain persons, and the like; for however these may disgrace him, *his position is one of his own selection.* (1 *Greenl. Ev.* § 456.)

It has been held in states where persons are excluded as witnesses, for defect of religious sentiment and belief, that if the ordinary oath is administered to a witness, without his making any objection to its form, he may be afterwards asked whether he thinks the oath binding on his conscience. (*Id.* § 371.) And I think, inasmuch as the barrier against admit-

ting unbelievers in any thing heavenly or divine to testify has been thrown down in this state, witnesses may be compelled to disclose, on cross-examination, their opinions on matters of religious belief; for however awful their opinions may be, they are of their own choosing. This rule only carries out that doctrine of the common law which permits the laying open, as far as possible, the minds of witnesses to those who are compelled to pass upon their evidence. I have no fears that this rule will encourage parties to scandalize truly religious witnesses by imputations that they profess the worst of creeds. For so long as no religious test shall be required for judges and jurors, parties will be loth to cross-examine witnesses as to their opinions on matters of religious belief, unless they are well assured the opinions of the witnesses are very obnoxious to the sentiments of citizens who say with Pope,

> " For modes of faith let graceless zealots fight,
> His can't be wrong whose life is in the right."

My conclusion is that the judge committed no error in his ruling or charge to the jury on this branch of the case.

Another question is presented by the exceptions, which I will now consider.

No evidence was given that Thomas C. Hopkins was indebted to any person except the plaintiff at the time the defendant purchased the property in dispute of him. The judge must have supposed that some evidence had been given that he had creditors at the time he sold the property to the defendant; for he charged the jury, if they believed from the evidence that the defendant purchased the property in question, with intent to defraud the creditors of Thomas C. Hopkins, the plaintiff was entitled to their verdict, although they should find that the defendant did not know of the plaintiff's mortgage, or of the debt to the plaintiff, at the time of such purchase.

If the defendant did not know that Thomas C. Hopkins owed the plaintiff, or that the plaintiff held the mortgage against him, on which the plaintiff claimed the property in dispute, the defendant had no knowledge whatever, for aught

that appears by the evidence, that Thomas C. Hopkins had any creditor; and therefore he could not have purchased the property in dispute with intent to defraud any body.

The jury were permitted to assume or imagine without evidence that Thomas C. Hopkins had creditors; or they may have supposed the charge authorized them to do so. For this reason I think the charge on this branch of the case was erroneous. (*See Burr* v. *Broadway Ins. Co.*, 2 *E. P. Smith*, 267, 272, 274.) And on this ground I am of the opinion there should be a new trial granted; with costs to abide the event.

CAMPBELL, J. The objection that the plaintiff had incumbered the land was not well taken. It would not necessarily prevent the plaintiff from performing his contract.

The question whether the witness Spencer could be inquired of as to his religious belief, and whether that could be submitted to the jury, is one of interest, though one upon which I think there ought not to be much doubt or difficulty.

The first constitution of this state, adopted in 1777, and drawn up principally by that eminent jurist and christian statesman John Jay, contained the following section, (§ 38 :) "And whereas, we are required by the benevolent principles of rational liberty, not only to expel civil tyranny, but also to guard against that spiritual oppression and intolerance, wherewith the bigotry and ambition of weak and wicked priests and princes have scourged mankind; this convention doth further, in the name, and by the authority, of the good people of this state, ordain, determine and decree, that the free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever hereafter be allowed within this state to all mankind, *provided* that the liberty of conscience hereby *granted* shall not be so construed as to excuse acts of licentiousness, or justify practices inconsistent with the peace or safety of this state."

All of this section, with the exception of the preamble, was re-adopted in the constitution of 1821. A single word only

Stanbro *v.* Hopkins.

was altered.   The word *secured* was substituted for the word *granted* in the proviso.   It was declared by the change that liberty of conscience was a natural right, and not one derived from government.   The constitution secured it.   It was not granted.

In the present constitution the same provision is contained, with the following words inserted before what was the proviso in the former constitutions :   "And no person shall be rendered incompetent to be a witness on account of his opinions on matters of religious belief."   The statute law in force at the time of the adoption of the present constitution (2 *R. S.* 408, § 87,) was as follows :   "Every person believing in the existence of a Supreme Being who will punish false swearing, shall be admitted to be sworn if otherwise competent."   The constitution now makes him *competent* whether he believes in a Supreme Being or not.

It was distinctly stated in the convention, by the mover of the amendment, as follows :   "If there was any thing thus affecting his credibility, let it go to the jury.   Let it go to his credit, and not to his competency."   The amendment which was voted down in the convention, was one which allowed evidence to be given as to the belief of the witness, in order to affect his credibility.   As the law stood, no person was required to state his belief as a *requisite* to his *admission* to be sworn, "but the belief or unbelief of every person offered as a witness, may be proved by other and competent testimony."   This latter provision the convention would not adopt.   In the organic law of the state it was intended that the question of competency alone should be settled.   No testimony would be allowed on the question of competency.   That was settled.   So, more recently by statute the question of interest has been disposed of, in a similar manner.   The parties are competent witnesses for themselves.   Interest does not exclude them.   But the question of credibility still remains, and must remain so long as justice is administered by fallible men.   No constitution, no statute, could regulate it.   There is no longer a jury of the

vicinage. Parties and witnesses are most generally unknown to both courts and juries, especially in the higher courts. To a great extent this must be so, in large cities. When a stranger is offered as a witness on the stand, the judge and jury have a right to know what are his pursuits in life, his associations, and in many cases his opinions, so that they may the better judge what credibility he is entitled to. It is the duty of the court to see that such inquiries are not too much extended, and to check them when there is any tendency to abuse. Religious opinions, though necessarily of a delicate nature, are not without the pale of inquiry. It was said by that stern and able old judge, Chief Justice Spencer, in *Jackson* v. *Gridley*, (18 *John.* 106:) "Religion is a subject on which every man has a right to think according to the dictates of his understanding. It is a solemn concern between his conscience and his God, with which no human tribunal has a right to meddle. But in the development of facts and the ascertainment of truth human tribunals have a right to interfere. They are bound to see that no man's rights are impaired or taken away, except through the medium of testimony entitled to belief. And no testimony is entitled to belief, unless delivered under the solemnity of an oath, which comes home to the conscience of the witness, and will create a tie arising from the belief that false swearing would expose him to punishment in the life to come. On this great principle rest all our institutions, and especially the distribution of justice between man and man."

I do not believe that it is improper or illegal to ask a witness, on his cross-examination, whether he believes in the existence of a Supreme Being who will punish false swearing. In this case the witness answered that he did not so believe. What to him, therefore, was the solemnity of an oath? The appeal to God was but a solemn mockery. But if all oaths were dispensed with in the administration of justice, all men would not be entitled to equal credit. Pursuits, habits, associ-

ations and opinions would still be the subject of inquiry for the purpose of informing the judgments of courts and juries.

But as my brethren think that there was error in that part of the judge's charge which submitted the question whether the defendant purchased the property with intent to defraud the creditors of his brother, on the ground that there was not sufficient evidence of there being other creditors, there must be a new trial.

All the judges were of the opinion that the judge, who presided on the trial, committed no error in permitting the plaintiff to show, by Spencer, on his cross-examination, that he did not believe in the existence of a God who will punish false swearing; or in his charge to the jury as to Spencer's evidence. But a majority of the court were of the opinion a new trial should be granted for the reasons contained in the concluding portion of the opinion of Justice Balcom.

New trial granted, costs to abide the event.

[CORTLAND GENERAL TERM, November 9, 1858. *Gray, Mason, Balcom* and *Campbell*, Justices.]

