AUGUST CHEMEDLIN et al,

*vs.*

JOSEPH W. PRINCE et al.

A sold B land in Ramsey county, part of the price of which was paid, and B's notes taken for the rest, and A gave B a bond, conditioned for the conveyance of the land to B on payment of the notes. B went into possession, but died without having paid the notes, and by his will devised the land to his wife for life, remainder to the plaintiffs, his children by a former wife, in fee. Afterwards A died, and by his will devised and bequeathed said purchase money and notes, and his interest and estate in the land to his residuary legatees. Afterwards one of said legatees, with the assent of the other, wrote the word " *cancelled* " on the face of the notes with his signature appended thereto, and delivered the same to his agent in St. Paul, with the intent thereby to relieve the estate of B from any further payment on account of said land, and said legatee also executed and delivered a warranty deed of the land to B's widow without other consideration than the supposition that thereby they were more fully accomplishing the purpose for which the notes had been cancelled. Afterwards B's widow died intestate, leaving three children by a

former husband. *Held:* that A's claim for the unpaid purchase money was not transferred to B's widow, and that her heirs were mere naked trustees of the legal title to the lands for B's heirs.

This action was brought in the court of common pleas, Ramsey county, by the heirs of Gabriel Franchere, against certain heirs of Charlotte S. Franchere and the administrator of her estate, to compel the conveyance of certain real estate, the title to which, plaintiffs claim, is held by defendants, in trust for them. The court below granted the relief demanded in the complaint, and the defendants appeal from its judgment to this court. The case is fully stated in the opinion of the court.

ALLIS, GILFILLAN & WILLIAMS for Appellants.

GEO. L. OTIS for Respondents.

*By the Court*—RIPLEY, CH. J.—October 13th, 1858, P. Chouteau, Jr., sold to Gabriel Franchere, a quarter section of land in Ramsey county, for the agreed price of 2800 dollars; 800 thereof to be paid in cash, and the balance in three equal installments, with interest.

For the deferred payments, the vendee gave his three promissory notes, payable November 1st, 1859, and annually thereafter, for $642, $684, and $726, respectively, (said amounts being made up of said installments and interest till maturity,) and the vendor gave him his bond for the conveyance of said land on payment of said notes, in fee, free of all incumbrances, except future taxes, which was duly recorded.

The vendee went into possession, and so continued till his death in 1863, and also paid the first of said notes at maturity.

He left a widow and four children, plaintiffs in this action, by a former wife.

By his will he devised all his estate, real and personal, to his said wife, for life, remainder in fee to his said children.

His widow died in December, 1868, leaving three children by a former husband, viz: John S. Prince, and defendants, Amelia Broome and J. W. Prince.

P. Chouteau, Jr. died in 1866, leaving a will, whereby the said unpaid purchase money, and notes, and all his right and title in and to said land, was devised and bequeathed to Charles P. Chouteau, and Julia Maffit.

In the summer of 1867, said Charles, with the assent of said Julia, wrote the word, *"cancelled,"* with his signature appended thereto, on the face of each of said notes, and de-livered the same to said John S. Prince, who was his agent in St. Paul.

The judge of the court of common pleas who tried the case, found that such delivery was to enable said Prince to carry out the purpose for which such cancellation was made, viz: to relieve the estate of said G. Franchere from any further payments on account of said land, in consideration of faithful services done and performed by said Franchere, to said P. Chouteau, Jr., said Charles and Julia believing that such cancellation was carrying out the intention of said Chouteau.

Afterwards, on the 23d July, 1867, said Charles and Julia executed a warranty deed of said land to Mrs. Franchere, and delivered it to said Prince, which is duly recorded. The judge finds that there was no consideration in such deed, other than the moral one; that in the execution thereof the grantors supposed they were more fully accomplishing the purpose for which the notes had been cancelled, and giving the proper legal effect to their intention of reliev-

ing the estate of Gabriel Franchere from all further payments on account of said land. Said John S. Prince has executed to said heirs of G. Franchere a deed of all his interest in said land, · without consideration, claiming no interest in it, but admitting it to belong in equity to them; and plaintiffs have requested the said J. W. Prince, and Amelia Broome, and George Broome her husband, to do likewise, but they refused, and said J. W. Prince has since quit-claimed all his interest to said Amelia, who claims to own two-thirds, undivided, of said land, subject to the right of plaintiffs to a conveyance, upon paying to her two-thirds of said unpaid purchase money. The plaintiffs produced the notes at the trial, but it did not appear in evidence at what time they became possessed of them. The action was brought to have the land adjudged to be the property of said devisees, of Gabriel Franchere, in fee, and that defendants George and Amelia execute and deliver to them a deed of said two-thirds thereof. Judgment was entered for the plaintiffs, and defendants appeal.

The defendants contend, that upon the face of the papers, the deed to Mrs. Franchere vested in her the fee of the land, subject to the right of the heirs of Gabriel Franchere, to a conveyance thereof from her upon paying her the unpaid balance, subject to her life estate in such proportion of the estate, as the part of the contract price previously paid by Franchere would bear to the whole price; and that the intention of P. Chouteau, Jr., and his devisees to make a gift, or gratuity of the notes, and the debt they evidenced to Franchere, or his devisees, was not carried into effect, and therefore does not avail to affect the legal result of the conveyance, as aforesaid.

But in equity, the land was the real estate of Gabriel Franchere from the time of the making of the contract, de-

scendible to his heirs, and devisable, and the vendor was seized in trust for him, which trust attached to the land, and bound all claiming under the vendor with notice. The vendor indeed when he contracts to sell has the estate under his control, and has the right to say that he will not convey till the purchase money is paid. That right creates a lien, and this lien for the unpaid purchase money, which exists before conveyance whether expressed in the contract of sale or not, continues after conveyance without payment, if not waived, as against the vendee, and his heirs, and those claiming under him with notice. It is not a new lien, but the same lien. 3 *Lea. Ca. in Eq.* 336, 357-8; 4 *Minn.* 68; 6 *Minn.* 450.

If it had not been so expressed in the bond, P. Chouteau would still have had the right in equity to withhold a conveyance from them till the purchase money was fully paid. By Franchere's will, his widow took an estate for life in the land, and his children a remainder in fee, (1 *Hilliard Vendors, ch.* 1, *sec.* 15,) and upon the conveyance to Mrs. Franchere, she became seized of the reversion in fee, in trust for Franchere's children.

And if the debt due from Franchere's estate to Chouteau's legatees was transferred to her, she would be entitled to withhold a conveyance of the reversion, till it was paid her. If it were not transferred to her, it would still belong to Chouteau's legatees. They could prove it against Franchere's estate, or, if the conveyance did not under the circumstances operate as a waiver of it, they could enforce their vendor's lien for it against the land. This is not the case of a sale of the land to a purchaser for value, but of a voluntary conveyance, with full notice to both parties of the equities of all concerned.

The deed, of itself, if Chouteau's legatees had kept the

notes, would not in equity transfer the debt to Mrs. Franchere, any more than a deed from P. Chouteau, Jr. to Gabriel Franchere, before payment, would of itself have operated as a discharge of the debt. The notes were the evidence of the debt. A transfer of the notes to her would have transferred the debt.

But Chouteau's legatees neither transferred the notes to her nor kept them ; on the contrary, they declared in writing upon their face, that they were cancelled, and delivered them to Mr. Prince.

Whatever may have been the legal effect of this act, it certainly affords no evidence of a transfer, or of an intention to transfer the debt to Mrs. Franchere. Upon the face of these papers, therefore, neither Mrs. Franchere nor her administrator, nor her heirs, could have refused to convey the reversion in fee of the land to her husband's heirs, upon the ground of any ownership of hers, or theirs, of the unpaid purchase money, or any part of it.

And when we look behind the papers, and see that it was the intention of Chouteau's legatees in cancelling the notes, to relieve the estate of G. Franchere, (which was liable to have them proved against it,) from any further liability, on account of the purchase money, and that they were delivered to Mr. Prince, to enable him to carry out that intention, and that the consideration of the deed, was the supposition of the grantors, that they were thereby more fully accomplishing the purpose for which the notes had been cancelled, and giving the proper legal effect, to the intention of relieving the estate of Franchere from any further payments, on account of said premises, the theory of a transfer, or intention to transfer this debt to Mrs. Franchere, is manifestly baseless. If, contrary to their expressed intention, to transfer the property to him, or his heirs, just as if

the notes had been paid, and to treat the debt as if it had been paid in his life time, the legatees of Chouteau should hereafter endeavor to make the estate of Franchere respond to them for this unpaid purchase money, the proper tribunal will decide such a claim.

At present, the refusal of defendants, who are mere naked trustees for Franchere's heirs of the legal title; to convey it to them, is the only obstacle to the entire execution of a praiseworthy and generous purpose. For such refusal, they have, in equity, no excuse.

At the trial, Mr. Chouteau, being called as a witness for the plaintiff, was asked the following question : What was your purpose in writing the words "cancelled" upon these notes ? which was objected to by defendants' counsel, as incompetent, irrelevant and immaterial, and defendants' counsel further objected to any testimony from this witness relative to the contract, or transaction with Mrs. Franchere, she being dead ; the objection was overruled and defendants excepted.

Defendants also objected to the introduction in evidence of the will of Gabriel Franchere as incompetent, irrelevant and immaterial ; the objection was overruled and defendants excepted. No point is made in the argument for defendants upon either of these exceptions, and the evidence was clearly proper. No evidence was offered, or given of any contract, or transaction with Mrs. Franchere. The will was an essential part of plaintiffs' chain of title. If a part owner of the debt cancelled the evidence of it, his object in so doing was as material, and evidence to show it as competent, as it would have been in regard to any other act of his, (as if for instance, he had torn the notes up,) when the inquiry was whether the debt was still outstanding.

The judgment of the court below is affirmed.