<div style="margin-left:2em">ALBANY,<br>October, 1823<br><br>Butts<br>v.<br>Swartwood.</div>

---

<div align="center">BUTTS <em>against</em> SWARTWOOD.</div>

ON certiorari to a Justice's Court. The action was trover, in the Court below, by Swartwood against Butts, for a bureau, which the plaintiff had bespoken of one Piper, a cabinet maker. He paid Piper for the bureau while at his shop. Piper then, before it was trimmed and varnished, removed it to his house, and sent word to the plaintiff to come and take it away, as he feared it might be taken on an execution against him. The plaintiff accordingly came to Piper's took a delivery of the bureau, but requested him to let it remain in his house, until it was trimmed, and until the plaintiff could come with a sleigh for it. It was accordingly left at Piper's house, where the defendant, who was a constable, levied upon it as Piper's property, under a regular execution which he had against him, and afterwards sold it, though P. offered to turn out other property. Both Piper and the plaintiff gave the defendant notice that the bureau was the plaintiff's, who forbade the sale. The cause was tried by jury.

<div style="margin-left:2em">One who believes in the existence of a God, who will punish him if he swears falsely, is a competent witness.

Within this definition, a universalist, who believes future punishment not to be eternal, is a competent witness.

The non-delivery of property, on sale, is only one circumstance in proof of fraud, and may be explained.</div>

ALBANY,
October, 1823.

Butts
v.
Swartwood.

The plaintiff proved his case by Piper, who was objected to as incompetent, on the ground of his infidelity. A witness testified that he had heard him frequently declare, " that he did not believe in the Bible more than any other history ; and that he would as soon swear by the uplifted hand as upon the book : but he at the same time declared that he believed in the Deity, and in the doctrine of universal salvation ; and that he considered some part of the Bible as the word of God."

The Justice decided that he was a competent witness, and he was sworn and examined accordingly.

*G. C. Edwards,* for the plaintiff in error.

*E. Dana,* contra.

*Curia,* per SUTHERLAND, J.    Two questions are presented : 1. Was Piper a competent witness ?  2. Was the sale from him to Swartwood fraudulent, as being intended to defeat the execution in the hands of Butts ?

The proper test of a witness' competency on the ground of his religious principles, is, " whether he believes in the existence of a God who will punish him if he swears falsely." (*Omichund* v. *Barker,* Willes, 549: *Jackson* v. *Gridley,* 18 John. 98.)   There is no evidence in this case, to show what precise creed is embraced in the doctrine of universal salvation.   But I do not understand all those who hold that doctrine, to deny all future punishment.   Some only deny the duration of those punishments to be eternal.   If this is a true exposition of their faith, then the witness comes within the rule.   For aught that appears he believed in the existence of a God and a future state of rewards and punishments.   He was, therefore properly admitted.(*a*)

(*a*) In some counties of this state, there are many persons belonging to that class of universalists who deny any future punishment of the wicked, after this life.   In the Courts of Common Pleas and at Nisi Prius, in those counties, the question, as to their admissibility as witnesses, has been frequently agitated ; but has never been distinctly brought before the Su-

The sale was not fraudulent. Piper swears expressly that he had other property sufficient to satisfy the execution

ALBANY,
October, 1823
Butts
v.
Swartwood.

preme Court for its decision. The following report of a case of that kind is from the manuscript notes of the Circuit Judge.

"THE PEOPLE *against* ZERUBBABEL MATTESON.

THE defendant was indicted for perjury. On the trial, at the Court of Oyer and Terminer in Otsego county, in July, 1824, Raymond Williams, the prosecutor, was called as a witness on behalf of the people and was objected to, as incompetent, on the ground of his infidelity. A witness, for the defendant, testified that he had frequently heard the prosecutor declare, that *he did not believe in any future punishment, after this life.*

The question, as to the admissibility of the witness, was argued by the counsel for the defendant and by the public prosecutor.

WALWORTH, Circuit Judge, delivered the opinion of the Court. It is a legal presumption, that every person born and educated in a christian country, and who has arrived at years of discretion, is a competent witness, until the contrary is shown. It is, therefore, incumbent on the party objecting to such a witness, to show by clear and satisfactory proof that he is incompetent. Without such proof it will not be presumed that such a witness disbelieves in the existence of a God, or in that attribute of Divine justice which will, sooner or later, ensure the punishment of the guilty.

I apprehend the true test of the competency of a witness to be this: has the obligation of an oath any binding tie upon his conscience? Or in other words; does the witness believe in the existence of a God who will punish his perjury? If he swears falsely, does he believe he will be punished by an overruling Providence, either in this world or in the world to come? If he does not believe in the existence of a God; or if he believes in no punishment except by human laws, no obligation or tie can have any binding force upon his conscience. But if he believes that he will be punished by his God even in this world, if he swears falsely, there is a binding tie upon the conscience of the witness and he must be sworn; and the strength or weakness of that tie is only proper to be taken into consideration in deciding upon the degree of credit which is to be given to his testimony. It is a question as to his credibility and not as to his competency.

I am aware that, in the case of Gridley, the late Chief Justice Spencer lays down the law as clearly settled, that a witness must believe in a state of rewards and punishments *in the world to come,* or he is incompete t. If the question had been directly before the Court, in that case, I should consider this Court bound by the opinion of the Chief Justice, as being the decision of a higher tribunal, on this precise question. But, in that case, the witness had declared his total disbelief in the existence of a Supreme Being. He believed in no punishment by an overruling Providence in this life; and he believed that at death he would perish with the brutes. There could be no binding tie upon the conscience of such a witness, for he had no conscience. He considered himself, and was in fact, no better than a beast. That part of the opinion of Ch. J. Spencer which relates to

which he offered to turn out, and which Butts refused to take, and no attempt was made at the trial to contradict him.

punishments in another world was, therefore, an *obiter dictum;* and wholly unnecessary to the decision of the cause then before the Court.

I should, notwithstanding, pay great deference to this opinion, as coming from the pen of such an able jurist, was I not satisfied he had fallen into the same error with many of the English writers, in relation to this question.

The foundation of all the error on this subject, both in this country and in England, was the misreporting of the opinion of Chief Justice Willes as delivered in the case of *Omichund v. Barker,* in February, 1745. This case was first reported by Atkyns, in 1765. In that report Ch. J. Willes is made to say, "I am clearly of opinion that if they do not believe in a God or *future* rewards and punishments, they ought not to be admitted as witnesses.". And this expression as reported by Atkyns is referred to by most of the English writers in relation to this question. But Willes, in reality, did not say any such thing; but on the contrary expressly declared that, in his opinion, an infidel who believes a God and that he will reward and punish in this world, but disbelieves a future state, may be a witness. His opinion in *Omichund* v. *Barker,* was drawn out at length by himself, and was left among his other manuscript decisions; but it was not published till 1799, more than fifty years after it was delivered, when Willes' Reports were collected from the manuscripts of that learned Judge, by Mr. Charles Durnford.

In the opinion as written by himself, and correctly reported by Durnford in Willes' Reports, he says, "I am clearly of opinion that such infidels, if (any such there be) who either *do not* believe a God, or if they *do,* do not think that he will either reward or punish them *in this world or in the next,* cannot be witnesses in any case, nor under any circumstances; for this plain reason, because an oath cannot possibly be any tie or obligation upon them." It is somewhat remarkable that the rule of exclusion as laid down by Ch. J. Spencer in Gridley's case, is in the very language of Willes, except the leaving out of the words, "in this world or in the next," and substituting therefor, "in the world to come." To show that if there is any tie upon the conscience of the witness his infidelity goes to his credit, and not to his competency, in another part of his opinion Ch. J. Willes says— "Suppose an infidel who believes a God and that he will reward or punish him *in this world,* but does not believe a future state, be examined on oath, *as I think he may;* and on the other side to contradict him a christian is examined who believes a future state and that he shall be punished *in the next world as well as in this,* if he does not swear to the truth; I think that the same credit ought not to be given to the infidel as to the christian, because he is plainly not under so strong an obligation."

Such I understand to be the common law of England as it existed at the time of our revolution; and which, by the constitution, is made the law of

The purchase of Swartwood, therefore, could not have been with intent to defeat the execution. The question of fraud

<div style="text-align: right">

ALBANY,
October, 1823.
_____
Butts
v.
Swartwood.

</div>

this state. And this is not a hasty opinion formed during the trial of this cause, but from having examined the subject heretofore. In this opinion I believe also I am supported by most if not all of the Circuit Judges.

There is nothing, in the case before the Court, to show that the creed of this witness is materially variant from that of a considerable class of the universalians, who believe in the existence of a God, in the authenticity of the scriptures, and in the divinity of the Saviour, but deny that there is any punishment for the wicked, after this life. Until the contrary is shown, we are bound to presume he believes in the existence of a God, who will punish the wicked, *in this life.* In the view I have taken of the subject, this would render him a competent witness ; and as I have before observed, if his creed is any worse than this it is incumbent on the defendant to show that fact. And however much I may regret the existence of a creed which may jeopardize the future happiness of its possessor, the rules of law and rights of conscience must not be infringed. The witness must therefore be sworn, and the jury are the proper judges of his credibility.

*E. B. Morehouse,* (Dist. Att'y) for the People.

*S. Starkweather,* counsel for defendant."

The opinion of Ch. J. Willes, as reported by Dunford, is remarked by the reporter as having been taken from the original manuscript and in the Chief Justice's own words. See the preface to Willes' Reports, and the opinion at length commencing at the 540th page. The case in M'Nally is evidently copied from the report of the case by Atkyns ; and Wooddeson refers to the same report. (3 Wood. 279.)

Lord Chancellor Hardwick says " all that is necessary to the validity of an oath is an appeal to the Supreme Being as thinking him the rewarder of truth and the avenger of falsehood. (1 Atkyns, 48.)

In that valuable work, entitled, *Introduction to the law relative to trials at Nisi Prius;* compiled by Mr. Bathurst, (afterwards Lord Apsley,) and republished, by the late Mr. Justice Buller, in 1772, the law is thus laid down : " Infidels cannot be witnesses ; i. e. such who profess no religion that can bind their consciences to speak truth. But when any person professes a religion that will be a tie upon him, he shall be admitted as a witness, and sworn according to the ceremonies of his own religion. (Buller's N. P. 292.) Professor Wooddeson, speaking of the case of *Omichund* v. *Barker,* says, " two of the learned Judges expressed themselves, clearly, of opinion that a professed *atheist* could not be a witness." And the professor thereupon adds, " the case of men wholly without religion (if any such there be) may justly be thought a reasonable and lawful objection to bearing testimony in any cause or trial whatsoever. And this we may set down as the *first general exclusion,* from giving evidence known to our laws " (3 Wood. 282.) In 1818, the Supreme Court of Massachusetts de-

ALBANY,
October, 1823.

depends upon the motive. The non-delivery of the bureau is only one circumstance in proof of fraud; and it is accounted for. (*Beals* v. *Guernsey*, 8 John. 446. *Wickham* v. *Miller*, 12 John. 320.)

Judgment affirmed.

cided that the disbelief of a witness, *in a future state of existence*, went only to his credibility and not to his competency. (*Hunscom* v. *Hunscom*, 15 Mass. Rep. 184. The Supreme Court of Errors in Connecticut, in 1809, decided, that a witness *who did not believe in the obligation of an oath* and a future state of rewards and punishments, or any accountability after death for his conduct, was by law excluded from being a witness. That it would be idle to administer an oath to a person who disregarded its obligation. But that every person who believes in the obligation of an oath, whatever may be his religious creed, whether Christian, Mahomedan or Pagan, or whether he disbelieves them all, may testify in a Court of Justice, being sworn according to that form of oath which, according to his creed, he holds to be obligatory. (*Curtis* v. *Strong*, 4 Day's Rep. 55.)

By the "*act concerning oaths*," (1 R. L. 386, s. 15,) any person having conscientious scruples as to the mode of administering an oath, on the gospels, may, with his hand uplifted, swear by the ever-living God, and shall not be compelled to lay his hand on or kiss the gospels.

I am not aware that there is any case, either in this country or in England, where it has been expressly decided that a disbelief in a future state of rewards and punishments was, alone, sufficient to exclude a witness.

See further on this subject, as to the competency of witnesses, on the ground of infidelity, and as to the manner of proving it, Phillips' Evidence, 16 to 20 ; *Denn* v. *Vancleve*, (2 South. Rep. 652 ;) and the opinion of the Judges, in the Queen's case, (2 Broderip & Bingham, 284.)