Wood, J.
The question raised upon the record, in this case, is, whether the court of common pleas erred in the rejection of Atwood’s deposition ? Much learning has been expended by many of the ancient writers, in defining the nature and obligations of an oath. Fleta. 344, lib. 5, c. 22; Brae. fol. 116; Brit, de Chal, de Jurors, 135, c. 53; Fortes. de Laud. Leg. Anglica. 58, c. 26; 2 Co. Inst. 479 ; 3 Inst. 165, c. 14; 1 Atk. 22, etc. But by Chief Justice Abbot, in the queen’s case, an oath is declared to be the calling upon God to witness, that what is said by the person sworn is true, and invoking the divine vengeance upon his head, if what he says is false; and, upon interrogatories put to the judges by the lords, it was responded by that very learned and distinguished judge, that if the witness states he considers the oath binding on his conscience, it is periectly unnecessary and irrelevant, to ask any further questions. 3 Stark. Ev. 1734, note m. In many of our elementary treatises, it is laid down as the ^invariable [124 rule, that, before a witness takes the oath, he may be asked whether he believes in the existence of a God, the obligations of an oath, and in a future state of rewards and punishments; and if he does not, he can not be sworn. 1 Stark. Ev. 122; 11 Peak. N. P. 11.
*125 That the principle here given would exclude a professed atheist, as incompetent to testify, is very clear, and there are perhaps few subjects on which there has been a greater uniformity of decision in both the English and American courts than that such person is totally incompetent. 1 Atk. 45; Bul. N. P. 202; Leach’s O. C. L. 483; Bract. 116; 2 Cow. 431; 18 Johns. 98; 4 Day, 51; Yerger, 224; 7 Conn. 82; 4 N. H. 444; 2 Term, 96. The reason, as given in the books, is, that upon the conscience of such a witness, the oath has no binding force or obligation. But it does, by no means, follow, laying out of view section 3, article 8, of the constitution of Ohio, and proceeding upon the broad basis of the common law, that a witness, to be competent, must believe in a state of existence after death, or in a future state of rewards and punishments. If it have been so declared, in a very few instances from the bench, and a witness occasionally required so to square his opinions, the origin is undoubtedly to be traced to those gloomy times of papal superstition, when sectarian influence and fanaticism overspi’ead the land of our ancestors, and to deny the real presence was but the prelude to the stake! When human penalties were considered as nothing, in controlling the conduct óf a witness; and that neither his obligations to society, nor his admissions of the moral influence of an overruling power, in this world, were a sufficient guaranty to bind his conscience, and guard the community against falsehoods, unless the witness also believed in a future state of rewards and punishments. But in 1744, such notions were found by experience to be too contracted for the purpose of substantial justice, and íd Omychund v. Barker, before Lord Chancellor - Hardwick, assisted by the lord chief baron of the exchequer, and the lord chief justices of the king’s bench and common pleas, it was held that the deposi125] tion *of a Gentoo, sworn according to the custom and religion of his own-country, was competent testimony, because he believed in a God, the creator of the world. 1 Atk. 40. Lord Chief Justice Willes, in the same case, page 43, asserts his opinion that some infidels, under some circumstances, may be admitted to testify; that Lord Coke’s opinion was too narrow; he would exclude Jews, as well as heathen ; that Lord Coke was a very great lawyer; but our Savior and St. Paul were much better authority, and they had declared that “ God was no respecter of person."
Lord Chief Justice Lee declares, that rules of evidence are arti *126 ficial, but one rule can never vary — the eternal rule of natural justice; that the case before him was to be looked upon in that light, and the evidence to be considered «in that way which was agreeable to the laws of England. Id. 44.
It would seem that the opinion of Chief Justice Abbot, before cited; the rule in Starkie, that.the witness must believe in a God, the obligation of an oath, etc.;' and the opinion of the court in Omyehund v. Barker, are perfectly reconcilable, and indeed support each other, and they are certainly sustained by the current of the American decisions. 15 Mass. 184 ; 2 Cow. 431, 433 ; U. S. C. 345. Though there are cases opposed to be found in the books 7 Conn. 66; Swift’s Dig. 739. But to reconcile the authorities, the' three several propositions in 1 Starkie’s Ev. 122, must be disjunctively considered.
We think, then, that it may, at this time, be considered as pretty generally settled, both in England and in the United States, that whoever believes in the moral influence and control of an overruling Providence in this life, and that an oath is binding on his conscience, is competent to testify; for, aside from the penalties imposed by civil enactments, if the witness believe in the moral obligations of an oath, the reward of good and punishment of evil action, by some superior power, is irresistibly implied. And it is worthy of consideration, whether the great ends of justice, the object of all law, would not be promoted, even if this requisition were swept away, and no inquiry permitted *as. to what concerns the duties [126 of the creature to his Creator only, in order to determine the competency of the witness. We are, however, to declare the law as we find it, and, if defective, it belongs to another forum to remedy the evil.
In this case, it is apparent that the deposition should not have been excluded.
The witness disbelieved in a future state of rewards and punishments, accountability or existence after death ; but this was at a period long anterior to the taking of his testimony. But if such disbelief continued, it is consistent with the most perfect conviction of a superintending power, the obligation of an oath, morally considered, and the influence of God’s providence and government in this life, and fully within the principle decided in Easterday v. Kilbourn, Wright, 345.
It has been questioned, whether the declarations made out of *127 court, by a witness, are competent evidence to prove his want of religious belief. This is settled, in the affirmative, by several adjudicated cases. Norton v. Ladd, 4 N. H. 444 ; Atwood v. Welton, 7 Conn. 66. It is questionable, however, whether such declarations should not be confined to some period shortly anterior to giving evidence by the witness, so that no change of opinion might reasonably be presumed.
From the view we take of this case, it is unnecessary to consider the constitutional question presented, whether the rejection of a witness for the defect of l’eligious belief interferes with the rights of conscience? And sufficient for the day is the evil thereof.
The judgment of the court of common pleas is reversed, with costs, and the case remanded.
Judgment reversed.†

 Where a father and son were called as witnesses, and it was proved that the son had often declared he did not believe in the existence of a God or a future state; and that the father had declared he did not believe in the latter, had read Tom Paine's works, and did not know whether he (the witness) believed anything, Story, J., rejected both as incompetent. Wakefield v. Boss, 5 Mason, 16, 18, 19, note.