Okey, O. J.
If the act of the superintendent, in permitting the patient’s sister to remove her temporarily to Texas, required the assent of the trustees of the hospital to render it valid, their subsequent assent, in view of the statute and the mode of conducting business at the hospital, should be regarded as equivalent to precedent authority. Assuming, then, without deciding, that a husband is entitled to a peremptory mandamus for the restoration of his wife to an insane asylum, where the superintendent has permitted her to be removed therefrom without authority, the question here is, whether such superintendent acting in good faith, with sole reference to the welfare of the patient, may, with the assent of the trustees, permit such temporary removal under the circumstances stated.
“ A patient may be discharged from an asylum for the insane upon the application of the superintendent to one of the trustees, and order of such trustee.” Rev. Stats. § 709. “ If the friends of a patient ask his discharge from the asylum, the superintendent may require a bond to be executed to the state, in such sum and with such sureties as he deems proper, conditioned for the safekeeping of such patient.” Rev. Stats. § 717. Other provisions relate to the powers and duties of the trustees and officers of such institutions ; but it was obviously impossible to provide in detail for the management of such. *499 asylums, and hence it is provided that the board of trustees shall establish such rules and regulations as may be deemed expedient for the government of such hospitals. Rev. Stats. § 639.
Much reliance is placed by the counsel for the relator on the statutory provision, that “all persons who have been or may hereafter be admitted into either of the asylums for the insane belonging to the state, shall. be maintained therein at the expense of the state.” Rev. Stats. § 700. No doubt this prohibits the maintenance of a patient, at the expense of the state, in any other place than the asylum. But it would lead to absurd consequences to hold that a patient cannot be taken beyond the walls of the asylum. If a dangerous epidemic should appear in such place, it cannot be doubted that there would be authority to remove the patients therefrom, and manifestly there would be such right in case of fire, and yet no provision is made for removal in case of either pestilence or fire. So, a visit to an exposition, or fair, or other like public place, is sometimes permitted, on the ground that it will be conducive to the patient’s restoration; but the statute confers on the superintendent no such express power. In fact, the power of the superintendent is measured, in no small degree, in matters of that sort, by the apparent welfare of the patient.
In no respect is the advance in civilization exhibited in a more marked degree than in the treatment of the insane. The harshness to which this unfortunate class was formerly srrbjected was in many cases revolting. But in this respect there has been a revolution, and the inmates of insane hospitals are now, as a rule, treated with kindness and a humane regard for their welfare. As we have seen, one still insane may be discharged from the asylum and placed in the care of friends. This, no doubt, may be done whether such friends live within the state or beyond its limits. The general rule that “ general words in statutes must always be construed in view of the territorial limit to the powers of the general assembly” (10 Ohio St. 121), has no application to the statutes upon this subject. Experience has shown that such change may be for the welfare of the patient, and desirable for other reasons. Ray’s Med. Jur. of Insanity, ch. XXYIII. There would seem to be as much *500 reason for permitting the friends to have charge of the patient where the removal is temporary as in case of discharge ; nor is there any more reason for restricting such removal to a place within the state in one case than in the other. True, there is no absolute right in Mrs. Kegan or tbe superintendent to remove the patient from Texas to the Columbus asylum ; but the comity which in all similiar cases is constantly recognized, would doubtless permit such removal, and if need be the authorities of Texas would probably aid in such removal. "Wharton’s Conf. L. §§ 263, 269.
Construing the statutes relating to asylums and the insane in the liberal spirit in which they were enacted, and viewing the question before us as simply one of power, we are of opinion that the law places no such restriction as that claimed on the authority of the superintendent. We hold, therefore, that the court of common pleas erred in sustaining a demurrer to the answer of the superintendent, and that the district court erred in affirming the orders of the court of common pleas.

Judgment reversed.