(Pickaway County Court of Common Pleas.)

CARNEGIE BROS. & CO. *v.* THE LANCASTER & HAMDEN RAILWAY COM-
PANY ET AL.

1. A contract for the sale of 7,000 tons of steel rails to be delivered as follows : " 550 tons
   during the month of April, and the remainder in quantities of 1,000 tons per month
   thereafter until contract is completed, and to be paid for in cash on presentation of
   sight drafts with bills of lading covering shipments of each 500 tons," is an entire
   contract ; and a lien perfected in pursuance of the statute within forty days from the
   delivery of the last shipment, constitutes a valid lien for the whole of the materials
   so furnished under such contract.
2. And an agreement between the parties to extend the time of payment on the first ship-
   ment for thirty days upon condition that additional security should be given, did not
   have the effect to waive the lien, nor to make the contract severable.
3. A person furnishing materials for the construction of a railroad in this state under a
   contract with said railroad company or with a contractor of said company,
   by the terms of which said materials are delivered outside of this state, is entitled to
   a lien against said railroad under the mechanics' lien law of this state, for the ma-
   terials so furnished.

(Decided April 24, 1894.)

ABERNETHY, J.

This action was brought to enforce a mechanics' lien. The facts as
agreed upon between the parties were that on the 27th day of March, 1890,
the plaintiffs entered into a written agreement with E. P. Buell & Co., who
had contracted with the defendant railroad company for the construction
of a railroad for the defendant between certain points in this state, by the
terms of which the plaintiffs were to furnish and deliver to said Buell &
Co. at Bessemer, Pennsylvania, 7,000 tons of steel rails at the price of $35.00
per gross ton.

The agreement stipulated (omitting immaterial provisions) that said
rails were to be delivered as follows : "550 tons during the month of April,
and the remainder in quantities of about 1,000 tons per month thereafter
until contract is completed and to be paid for in cash, on presentation of sight
drafts with bills of lading covering shipment of each $500 tons, at First Na-
tional Bank, Circleville, Ohio." The agreement contained the further
stipulation " that the terms of payment so far as relates to the first ship-
ment of five hundred and fifty tons, is to be waived, and the following
substituted : payment for the first five hundred and fifty tons to be made
in cash within thirty (30) days from date of shipment, said parties of the
second part to give the party of the first part an order on O. Ballard, trus-
tee, for the amount subscribed by the town of Tarlton, Ohio, some, $15,000,
as additional security for the payment of the above five hundred and fifty
tons of rails."

Rails were furnished by the plaintiffs as follows : 626 tons during the
month of April—the last shipment being on the 30th, and fifteen tons on
the 30th of June. Buell & Co. failed to comply with this agreement by
paying for the rails, and no more were shipped.

On July 24, 1890, plaintiffs filed with the recorders of the proper coun-
ties, statements of their account of the above materials, with the necessary
affidavit as required by the statute, in order to perfect their lien.

The defendants claim :

1. The contract is severable, and that as to the 626 tons furnished in
April the plaintiffs are not entitled to a lien, because it was not perfected
within forty days from the date of the last shipment in April, and that at
most, they are only entitled to a lien as to the fifteen tons furnished in
June.

They further claim that the plaintiffs, by their agreement to extend

the time of payment for thirty days on the first shipment, by Buell & Co. giving additional security, waived their right to a lien, and also that it had the effect to make the contract severable, if it was not so already; and

2. That the plaintiffs are not entitled to a lien, because by the terms of the contract, the rails were to be furnished and delivered, and were furnished and delivered outside of the state of Ohio.

As to whether the contract is severable. No precise rule can be laid down for the solution of the question whether a contract is entire or severable, but it must be solved by considering both the language and the subject matter of the contract. A contract may be entire for one purpose, and severable for other purposes. It may be entire as to the amount of materials to be furnished, and severable as to the times of payment. It depends upon the intention of the parties, to be gathered from all the circumstances surrounding the agreement, and from the face of the contract, if in writing. *State v, Davis*, 20 Atl. Rep. 1080, (N. J.); *Moore v. Bennett*, 40 Cal. 251.

The rule as stated in Parsons on Contracts, is that if the part to be performed by one party, is expressed by several and distinct items, and the price to be paid for them, is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held severable. 2 Parsons on Cont. 29, 31; *Sickles v. Pattison*, 14 Wend. 257; *Oil Co. v. Brewer*, 66 Penn. St. 351; *Morgan v. McKee*, 77 Penn. St. 228; *Scott v. Coal Co.*, 89 Penn. St. 231; *Johnson v. Allen*, 56 Am. Rep. 34 (Ala).

It is not the multiplicity of items in a contract which determines its severable or non-severable character, but its object. 2 Parsons on Cont. 517.

In the case of *Gomer v. McPhee*, 31 Pac. Rep. 119, (cited by counsel for defendant), the plaintiff was to furnish defendants 1,500,000 feet of lumber, delivered on cars, and in case defendants did not want the lumber shipped, it was to be piled and received monthly, and all lumber so piled and shipped in the month previous, was to be paid for on the 10th of the succeeding month. It was held that the contract was severable, and a failure to deliver all the lumber specified in the contract, did not preclude a recovery for the amount actually delivered.

Some of the cases cited by counsel for defendant, would seem to sustain their claim that the severability of the contract is to be determined solely by the test as to the right of the plaintiffs to have brought their action for the rails which were delivered in April, or upon the shipment of the first 500 tons; and if this were the only test, I think it would be decisive of the question, for there seems to be no doubt but that the plaintiffs might have maintained an action against Buell & Co., upon the shipment of the first 500 tons, according to the terms of the contract; but the weight of authority is opposed to this view, especially as to the right to obtain a lien upon each shipment. The statute under which the lien in this case was taken, does not seem to contemplate that a contractor, or subcontractor, shall, from time to time, as the work progresses, file successive liens for labor performed and materials furnished, under an entire contract; but he is entitled to acquire only one lien for this purpose; his claim must be filed "within forty days from the date that such person ceased performing labor or furnishing materials." The case of *Smith Bridge Co. v. Bowman*, 41 Ohio St. 37, sustains this view. It was there held that where the contract with the railroad company, bound the contractor to build and complete certain bridges on the line of its road, and the times of payment were to commence from the completion of each bridge, for the purpose of obtaining the lien, provided by the statute, such a contract was an entirety.

The court, on page 55, (NASH, J.), say · "When the bridge company made this agreement in writing, and agreed to its terms, it undoubtedly

was influenced by the fact, that it was securing one job of work consisting of several bridges."

In *Steamboat, etc.* v *Geisse*, 3 Ohio St. 333, it is held that where the apparent intention of the parties to a contract, is to have new machinery made and old machinery repaired and put in running order, for a single purpose, of which work a part is not to be done without the whole, and all parts bear a necessary relation to each other, and where the provision for payment indicates that the parties themselves regard the argreement as an entirety, their intention prevails over any technical rules of construction, and the contract is to be taken as an entirity.

The court say in this case, page 338: "Modern English cases, and the leading American decisions, have taken from the rule once applied to the construction of contracts, as to their entirety or divisibility, and the dependence or independence of their covenants, much of their ancient strictnes and unreasonable refinements, not to say their absurd and oppressive character."

In the language of Parker, J., in *Johnson* v. *Read*, 9 Mass. 83, they "show a disposition on the part of the judges to break through the bonds which some old cases had imposed upon them, and to adopt what Lord Kenyon, in one of the cases, calls the common-sense doctrine that the true intent of the parties, as apparent in the instrument, should determine whether covenants are independent or conditional, instead of any technical rules of which 'the parties were totally ignorant, and the application of which would, in most cases, utterly defeat their intention."

And in *Chàteau* v. *Thompson*, 2 Ohio St. 115, where materials are furnished from time to time, for a particular purpose, and the dates are so near each other as to constitute one running account, the lien dates from the time when the first article was supplied. although strictly speaking, the articles were not furnished under one entire contract.

Where one party agreed to furnish the other ice during a given time and season, to be delivered from his cellar from day to day, at a fixed price per ton, payable monthly for the quantity delivered at the end of each month, it was held to be an entire contract. *Bersch* v. *Sander*, 37 Mo. 104.

A contract to grade a section of railroad is an entire contract, and a provision in it for payments from time to time, as the work progresses, does not make it severable.

But one mechanics' lien can be acquired on a section of railroad to be graded under an entire contract, and the contractor can not, because payments are due from time to time, file successive liens as payments are due.

*Cox* v. *R. R. Co.*, 47 Cal. 87; *Same* v. *Same*, 44 Do. 18; *Brick Co.* v. *Stout*, 47 N. W. Rep. 975 (Minn.) See, also *Lumber Co.* v. *Purdum*, 41 Ohio St. 373; *Hazzard* v. *Powder Co.*, 2 Dis. 544; Phillips on Mech. Lien, sections 230, 325; 2 Clev. Rep. 282; *Derrickson* v. *Edwards*, (N. J.) 80 Am. Dic. 220; 15 Am. & Eng. Enc. of Law, 73, note to page 7. So, in this case it must have been in contemplation of both parties at the time the contract was entered into, that the 7,000 tons of rails should be furnished, although by default in payment they were not all furnished, and that the plaintiffs " were influenced by the fact that they were securing one job of work," in the furnishing of 7,000 tons, and not that the 550 tons to be furnished in April, was to stand as an independent part of the contract.

Nor does the agreement of the plaintiffs to extend the time of payment for thirty days on the first shipment, upon the giving of additional security by Buell & Co., amount to a waiver of the plaintiff's lien, or have the effect to convert it into a severable contract under the construction which, I hold, should be given to this contract under the mechanics' lien law, and consequently did not require that a separate lien should have been taken for the 550 tons of rails, or for the April shipments.

The statutes of this state upon the subject of mechanics' liens, being remedial in their nature, are to be liberally construed in order to carry out the purpose of the legislature in their enactment. *Bullock* v. *Horn*, 44 Ohio St. 420.

Whether, under the proper construction of our mechanics' lien law, the plaintiff's lien would have been valid as to all the rails furnished, even though the contract was severable in its character, as contended by plaintiff's counsel, it is not necessary to determine.

2. The statement of facts shows that the plaintiffs agreed to furnish and deliver the rails on board the cars at Bessemer, Pennsylvania, and that they did so furnish and deliver them; and it is contended by defendants that under this contract the plaintiffs are not entitled to the benefit of the mechanics' lien laws of Ohio.

The Superior Court of Cincinnati in *Bender* v. *Stettinius*, 19 Bull. 163, is a direct authority in favor of the defendants' contention, as also the case of *Birmingham Iron Foundry* v. *Glen Cove Co.*, 78 N. Y. 30.

In the first case cited, tthe goods were furnished and delivered in Pennsylvania. The court say, on page 167: "The mechanics' lien law has no extra territorial effect. . It only applies to such labor and material as is furnished in Ohio. The act of furnishing must be in Ohio to entitle the actor to this statutory remedy." In the New York case the defendant had purchased an engine from plaintiffs at the manufactory in Connecticut, to be placed in the shop of defendant in Queens County, N. Y., and it was held by the court that no lien existed.

Rockel & White, in their Ohio Lien Laws, take the same view—pages 10 and 45; but they cite no other authorities than the ones above mentioned.

Phillips, in his work on Mech. Liens, quotes the last named authority and dismisses the subject in a part of one section—section 34. Indeed these two cases stand alone as authorities on that side of the question, as far as I have been able to ascertain, and counsel for defendants, in their briefs, have cited no others.

The case of *Steamboat Champion* v. *Jantzen*, 16 Ohio 91, and *Steamboat Ohio* v. *Stunt*, 10 Ohio St. 582, cited by counsel, do not sustain defendant's claim. On the contrary, the last case cited is rather an authority on the other side. It is there held that "although the legislature may provide remedies within this state, for the collection of claims, or enforcement of personal liabilities arising out of the state, it is not within the competency of legislative power upon grounds of public policy, to *create* personal liabilities and impose them upon persons and property out of the jurisdiction of Ohio, and on account of transactions occurring beyond the territorial limits of the state."

In the case of *King, Gilbert & Warner* v. *Ship Building Co.*, 50 Ohio St. 320, also cited by counsel, the court hold that, "under a contract, by the terms of which, one of the parties agrees to make certain machinery for the other, and furnish it F. O. B. cars, at a designated place, for a stipulated price, the machinery is furnished, within the meaning of the statute, when it is delivered in accordance with the contract, on board the cars at the place named, without expense to the purchaser; and to obtain a lien therefor, the necessary affidavit must be filed within four months from that date."

The court in this case was considering the statute with reference to the *time* within which the affidavit must be filed, and for that purpose the furnishing and delivering of the machinery meant the same thing.

It surely could not have intended to hold that the terms, furnishing and delivering for all purposes, were synonymous; for in section 3208, it is provided that, "in order to perfect such lien, a person  *  *  *  furnishing materials,  *  *  *  shall, within forty days from the date that

such person ceased  *  *  *  furnishing materials  *  *  *  on or for the railroad, file with the recorder *of the county where the*  *  *  *  *materials were furnished,* an affidavit," etc.

Sec. 3185, which provides for the lien on buildings, bridges, etc., contains the same provision, except that the time for filing the affidavit is four months instead of forty days.

Such a construction would require that a person furnishing materials for a building in Pickaway county under a contract to deliver them f. o. b. cars at Columbus, should file the necessary affidavit with the Recorder of *Franklin* county, instead of *Pickaway* county; or else, the effect would be that the materials in every instance, must be *delivered* in the county where they are to be used, in order to entitle a party to a lien.

The fact that Carnegie Brothers are non-residents of this state, of course, can make no difference, nor the fact that the contract was made out of the state.

The place where the contract is entered into is not material. The lien exists, notwithstanding it may be made out of the state, and although statutes cannot operate extra-territorial. It is not the contract which creates a lien, but the furnishing and use of materials in pursuance of its provisions within the state. Phillips on Mech. Lien, sec. 112, p. 204.

The question presented is whether Carnegie Bros. & Co., under a contract to furnish these rails for the construction of a railroad in Ohio, are entitled to a lien because, by the terms of the contract, the rails were not *delivered* in Ohio.

The Cincinnati Superior Court, following the decision in 78 N. Y., above referred to, holds that in such a case the lien does not exist, basing its decision on the ground that the " mechanic's lien law has no extra-territorial effect."

I am unable to see where there is any application of the principle that " the statute has no extra-territorial effect." The expression, according to Bouvier, means " that quality of laws which makes them operate beyond the territory of the power enacting them upon certain persons or certain rights."

If the plaintiffs were claiming a lien by virtue of a Pennsylvania statute, this principle would apply. *Woodard* v. *R. R. Co.,* 10 Ohio St. 121; *Horn* v. *R. R. Co.,* 25 Ohio St. 667; *Lehman* v. *McBride,* 15 Ohio St. 573; *Bank* v. *Hemingray,* 31 Ohio St. 168, 171.

This principle is involved in the case of *Cross v. Armstrong,* 44 Ohio St. 613. The court there held that section 3628 of the Revised Statutes, which provides that a person may effect insurance on his life for the benefit of his widow or children, and the amount of insurance coming due shall be payable to such widow or children exempt from claims of the representatives and creditors of such person, but the amount of annual premiums shall not exceed $150.00, and in case of excess there shall be paid to the beneficiaries such portion of the insurance as the sum of $150 00 will bear to the whole annual premium, and the residue to the representatives of the deceased, applies as well to a policy issued by a company organized and conducted outside of the limits of Ohio as to a policy issued by a company of this state.

The court on page 621 say:

" It will be noticed that the words of the statute do not limit its application. The language is comprehensive, and in terms it applies to all contracts of insurance obtained by citizens of the state. Why should we assume that the legistature intends that if the company happen to be a home company, the statute applies, while if one located in another state it does not apply ? "

The language of section 3208 is:  " A person," any person, "who per-

forms labor or furnishes materials," etc. And the legislature, as if to emphasize its intention, further enacted "that the true intent and meaning of sections 3207, 3208, 3209, 3210 and 3211 * * * is hereby declared to be as follows: Any person or persons who perform labor, or furnish materials or boarding, under a contract, express or implied, with such railroad company or any of its authorized agents, for the construction of such railroad, or any part tnereof, is entitled to a lien for the payment of the same, upon such railroad, as provided in section 3108 of the above recited act." See vol. 81, page 186, Ohio Laws. "The statute," say the court in *Bulloek* v. *Horn*, 44 Ohio St. 424, "is highly remedial in its character, and should receive such liberal construction as will carry out the purpose of the legislature in its enactment." And while it is held that the contract intended by the statute is one that has reference to the *purpose* for which the work is done or the materials furnished, and that if work be done or materials furnished, without a contract, that they shall be put to the particular use of erecting, etc., a building, no lien can be asserted, (*Chateau* v. *Thompson*, 2 Ohio St. 115), it is also held that it is not necessary that the contract should stipulate for such lien, or even, that the labor or material should be furnisned with an existing intention to perfect a lien on the property. *Iron Co.* v. *Murray*, 38 Ohio St. 327.

Whether it was within the legislative authority to have enacted that any person furnishing materials *within this state* should have the benefit of the lien, it is not necessary to determine; for, without some such provision indicating its intention to so limit its operation, it seems to me it would be a violation of the settled rules of statutory construction to hold that the lien extends only to materials furnished within the state. The most that could be claimed, we think, in a case like this, where the contract is that the materials are to be delivered outside of the state, there might be a presumption that the person furnishing the material intended to waive the lien; but why should this presumption arise in such a case any more than where the contract is to *deliver the materials in any county within the state other than the one in which the materials are to be used?*

I concede that if the construction given to this statute in *King* v. *Ship Building Co.*, 50 Ohio St. 320, as applied to the *time* of filing of the affidavit is to be applied here, and that the materials are *furnished* where they are *delivered*, the plaintiffs are not entitled to the lien; but such a construction would require that to entitle a person to a lien, the contract for furnishing the materials must stipulate for their *delivery in the county where they are to be used*; because no such absurd construction could be claimed as that the affidavit is to be filed in any other county.

The adjudications upon this question in other states (except the case in 78 N. Y.) have been in favor of the lien.

In *Thompson* v. *St. Paul Ry. Co.*, (Minn.) 47 N. W. 259, it is held: "Under the provisions of section 1, c. 90 Gen. Stat., (now repealed) which gave a lien to a sub-contractor, who furnished materials for the construction, alteration or repairing of any line of railway in this state, it was not essential to an enforcement of the lien, that said materials should have been furnished or delivered by the sub-contractor within the limitations of this state."

The statute above referred to provides that "whoever furnishes any labor, skill or material for constructing, altering or repairing any line of railway * * by virtue of a contract with the owner or with any original contractor with such owner * * shall have a lien to secure the payment for such labor, skill and material."

The court in deciding say: "The property to be affected by a lien statute is in the state, and wholly within its jurisdiction. The liens can only be enforced by the process and decree of our courts, and nothing would

stand in the way of their complete enforcement. Such a law would do no more than to prescribe the effect in this state of a combination of certain facts, part of which transpired in a sister state. The effect would be entirely within the boundary of this state, and it would seem to follow that this effect could not in any sense be deemed extra-territorial. If, therefore, the law-makers possessed the power to enact such a statute and authorize a lien, the inquiry is, have they done so? The law under which the plaintiff based its claim for such lien, does not in terms nor by implication, restrict the right to cases wherein the material has been purchased or actually delivered within the state. But upon the other hand, the language used is broad and ample enough to include all who may furnish materials, whether delivered within or without the limits of our state. We are of the opinion that it does, and that plaintiff is entitled to the relief demanded."

Of the case in 78 N. Y., the court say:

"With great respect for the conclusion of so eminent a court as that which rendered this decision, we are of the opinion that too restricted and limited a view was taken of the subject." See also *Atkins* v. *Little*, 17 Minn. 342.

In the case of *Faggan* v. *Boyle Ice Comyany*, 65 Texas, 324, it was held:

"That the statute gives a lien on land in the state for the price of materials to be used in the erection of an improvement on the land, notwithstanding the sale and delivery of such materials may have taken place beyond the limits of the state."

The court in deciding, refer to the case in 78 N. Y., and say:

"The single principle upon which that decision proceeds is that the law of a state can have no extra-territorial effect. This principle is confined to no country, but is in the nature of things necessarily both true and universal. But does the principle apply to the case? The question made is not one of legislative intent, but of legislative power; not what was done, but assuming that it was the purpose to create the lien in the given case, and that the language used was broad enough to compass the purpose, should such an act become a law? * * * * That one or all the facts from which the law evolves the lien, transpired beyond the limits of the state cannot affect the validity of the law which 'spends its force,' (Cooley on Const. 128), entirely within its territory. The effect of the law is wholly in the state, and we can see no objection to that effect, being conditioned on a fact wherever it occurs which transpires locally, but exists ubiquitously. There is no reason why the manufacturer in Chicago should have a lien when he makes his contract and delivers the material in Texas, and not have it when the sale and delivery thereof takes place at his factory."

The case of *Gatey* v. *Casey*, 15 Ill. 189, was a case of a sale of steam boilers by Gatey, in St. Louis, Mo., to be used by Casey in his mill in Adams county, Ill.

The court in deciding that case say: "The first objection taken is that as the contract was made out of the state, no lien can arise under our statute, which cannot operate extra-territorially. It is not the contract which creates the lien under the statute, but it is the use of material furnished upon the premises, the putting them into the building, attaching them to the freehold, which entitles the party to a lien to the extent of the value of them."

In the case of *Mallory* v. *La Crosse Abattoir Co.*, (Wis. 1891), 49 N. W. 1071, the court in delivering its opinion, says: "We are further of the opinion that the right of the plaintiffs to enforce a lien claim is not impaired or destroyed by the fact that they sold and delivered such materials

in another state. The statute is general, and does not restrict the right of liens to cases where the materials are sold and delivered in this state."

In the case of *Great Western Manufacturing Co.* v. *Hunter*, (Neb.) 47 N. W. 761, the court say : " The objection that the machinery having been embarked at Leavenworth, Kansas, and shipped to the purchaser at Atchison, Kansas, to be by them conveyed to the site of their elevator in Saunders County, Nebraska, was not the furnishing of such machinery in the latter named county, has received careful attention, yet I do not think either the letter or spirit of the statute requires that the machinery should be actually laid down at the site of the building by the lienor; but, if his labor, skill and capital produced it and set it in motion for that destination, and it finally reached it and was attached to the building for the purpose intended, then it was 'furnished' there by him without regard to the name in which it was shipped, or other matters connected with the transaction."

In the case of *Thurman, Adm'r* v. *Kyle*, 71 Ga. 628, it was held : " That a citizen of Alabama doing work or furnishing materials in Georgia, may enforce his lien therefor under sections 1979 and 1980 of the code, although the parties may have agreed in Alabama as to the price of lumber to be furnished for building a house in Georgia,  *  *  *  and the lumber was to be delivered in Georgia, and was so delivered and used. The law of the place of execution of the contract controls, with respect to its construction, and the remedies for its enforcement."

We therefore hold that plaintiffs have a valid lien for the rails so furnished by them, and that they are entitled to a decree enforcing the same.

*S. W. Courtright* and *Clarence Curtain*, for plaintiffs.

*Smith & Morris* and *Festus Walters*, for defendants.